UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KEVIN E. BROWN and EDWARD
MOSLEY, JR.,                                                                            Plaintiffs,

v.                                                                  Civil Action No. 3:19-cv-615-DJH-CHL

LOUIS DEJOY, Postmaster General of the
United States Postal Service,                                                          Defendant.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

United States Postal Service employees Kevin Brown and Edward Mosley, Jr. sued the Postmaster General, asserting claims of hostile work environment and retaliation under Title VII. (Docket No. 1; D.N. 27)  Postmaster General Louis DeJoy moves for summary judgment, arguing that Brown and Mosley lack sufficient evidence to support their claims.  (D.N. 21; D.N. 30)  After careful consideration, the Court will deny summary judgment as to Plaintiffs' hostile-work-environment claim but grant the motion as to Plaintiffs' retaliation claim.

**I.**

Brown has worked for the United States Postal Service since the late 1980s.  (D.N. 21-1, PageID # 89)  Mosley began working for USPS in the early 1990s and recently retired.  (D.N. 30-1, PageID # 856; D.N. 31, PageID # 1117)  Both Brown and Mosley are African-American.  (D.N. 1, PageID # 1; D.N. 27, PageID # 809)  In August 2016, Brown and Mosley filed complaints with the USPS Equal Employment Opportunity office, claiming that USPS forced them to work overtime and failed to pay them their earned wages.  (D.N. 21-3, PageID # 648; D.N. 30-3, PageID # 907)  USPS denied Plaintiffs' claims in September 2016 after it determined that they failed to

allege discrimination.  (D.N. 21-5, PageID # 136; D.N. 30-4, PageID # 912)  Ultimately, the EEO office affirmed the denial of their claims.  (D.N. 21-5, PageID # 137; D.N. 30-4, PageID # 913)

       Brown and Mosley reinitiated the EEO complaint process in December 2016.  (D.N. 21-6, PageID # 655–57; D.N. 21-7, PageID # 659; D.N. 30-5, PageID # 917–19; D.N. 30-6, PageID # 921)  In the December complaints, Brown alleged race and age discrimination (D.N. 21-7, PageID # 659), and Mosley alleged race, age, and physical-disability discrimination, hostile work environment, and retaliation for filing his August 2016 EEO complaint.  (D.N. 30-6, PageID # 921–23)  Specifically, Brown and Mosley stated that in response to their August EEO complaints, supervisor Everitt King asked either "What are y'all n****rs going to do, get a [l]awyer?" (D.N. 30-6, PageID # 922), or "What are you n****rs getting ready to do hire an [a]ttorney?"  (D.N. 21-7, PageID # 661)  Mosley also claimed that King referred to Mosley as the n-word once in 2015.  (D.N. 30-6, PageID # 922)  Further, Brown and Mosley asserted that supervisor Adam Nowland called them "boys" on at least one occasion (*id.*, PageID # 923; D.N. 21-7, PageID # 661), and that although neither Plaintiff requested overtime, supervisor Adam Green assigned them overtime on three days in early December 2016.  (D.N. 21-7, PageID # 662; D.N. 30-5, PageID # 917)  Finally, Plaintiffs alleged that in an annual meeting where USPS recognized veterans and gave them pins, supervisor Kevin Scott intentionally failed to acknowledge Mosley and Brown, despite recognizing them in previous years.  (D.N. 21-7, PageID # 661; D.N. 31-6, PageID # 923)  The EEO office investigated and denied all of Plaintiffs' claims.  (D.N. 21-8, PageID # 687; D.N. 30-7, PageID # 960)

       Relying on the same facts alleged in their December 2016 EEO complaints and adding that USPS did not have its anti-harassment policy prominently displayed in the workplace, Brown and Mosley filed separate actions in state court, asserting claims of hostile work environment and

retaliation in violation of Title VII, 42 U.S.C. §§ 2000e-2–2000e-3. (D.N. 1, PageID # 2–4; D.N. 27, PageID # 810–12) The Postmaster General removed the actions to this Court (D.N. 1; D.N. 27), and the Court consolidated the cases. (D.N. 26) DeJoy seeks summary judgment on both claims. (D.N. 21; D.N. 30)

## II.

Summary judgment is appropriate when a movant shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). If the nonmovant "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the fact may be treated as undisputed. Fed. R. Civ. P. 56(e)(2)–(3).

**A.**     **Hostile Work Environment**

To establish a prima facie case of hostile work environment under Title VII, Brown and Mosley must show that (1) they were "member[s] of a protected class;" (2) they were "subjected to unwelcome harassment; (3) the harassment was race-based; (4) the harassment unreasonably interfered with [their] work performance by creating an environment that was intimidating, hostile, or offensive; and (5) [their] employer was liable for the harassing conduct." *Scott v. G & J Pepsi-Cola Bottlers, Inc.*, 391 F. App'x 475, 477–78 (6th Cir. 2010) (citing *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007)). Here, the parties dispute the final two elements: whether the harassment unreasonably interfered with Plaintiffs' employment and whether USPS can be held liable. (D.N. 24, PageID # 628; D.N. 32, PageID # 1263)

3

### 1. Unreasonable Interference

To satisfy the unreasonable-interference element, Brown and Mosley "must present evidence showing that under the 'totality of the circumstances' the harassment was 'sufficiently severe or pervasive to alter the conditions of [their] employment and create an abusive working environment.'" *Scott*, 391 F. App'x at 478 (quoting *Clay*, 501 F.3d at 707). When determining if harassment is sufficiently "severe or pervasive," courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Williams v. CSX Transp. Co.*, 643 F.3d 502, 512 (6th Cir. 2011) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "The environment must be of the sort that 'a reasonable person would find hostile or abusive,' and the plaintiffs themselves must 'subjectively perceive the environment to be abusive.'" *Bailey v. USF Holland, Inc.*, 526 F.3d 880, 886 (6th Cir. 2008) (quoting *Harris*, 510 U.S. at 21). Thus, it is both an objective and subjective inquiry. *Id.* "[W]hether harassment was so severe and pervasive as to constitute a hostile work environment [is] 'quintessentially a question of fact.'" *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 310 (6th Cir. 2016) (quoting *Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir. 2006)). Neither "isolated incidents (unless extremely serious)" nor "occasional offensive utterances" are sufficient "to create a hostile work environment." *Williams*, 643 F.3d at 512 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Grace v. USCAR*, 521 F.3d 655, 679 (6th Cir. 2008)).

DeJoy argues that Plaintiffs cannot prove that their work environment was hostile because any harassment was neither severe nor pervasive. (D.N. 21, PageID # 71; D.N. 30, PageID # 838) Plaintiffs maintain that King's use of the n-word and Nowland's use of "boys" on separate

4

occasions, and King's use of the n-word on one additional occasion when referring to Mosley, are sufficient to create a hostile work environment.  (D.N. 23, PageID # 549, D.N. 31, PageID # 1114)

Brown and Mosley have shown that the conduct is subjectively severe and pervasive by testifying that they felt "humiliated" and "began to hate [their] work" after the incidents.  (D.N. 23-5, PageID # 625; D.N. 31-7, PageID # 1260)  Yet DeJoy argues that the conduct at issue is not objectively severe and pervasive, comparing the incidents to "cases with similar facts," in which the Sixth Circuit affirmed grants of summary judgment for employers.  (D.N. 21, PageID # 72 (citing *Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017); *Nicholson v. City of Clarksville*, 530 F. App'x 434, 443–44 (6th Cir. 2013); *Reynolds v. Fed. Exp. Corp.*, 544 F. App'x 611, 616–17 (6th Cir. 2013); *Armstrong v. Whirlpool Corp.*, 363 F. App'x 317, 327 (6th Cir. 2010); *Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 501–02 n.2 (6th Cir. 2009)); D.N. 30, PageID # 840 (same))

However, the cases DeJoy cites differ significantly from the facts presented here.  For example, in *Nicholson*, the supervisor never referred to the plaintiff as the n-word.  *See* 530 F. App'x at 440–43.  The other harassment in *Nicholson* was either perpetuated by fellow employees or not directed towards the plaintiff.  *Id.  Armstrong* is also not on point.  *See* 363 F. App'x at 327.  The harassment in *Armstrong* involved racist graffiti, which was immediately painted over after the plaintiff reported it, and non-supervisory employees using racist language.  *Id.*  Similarly, none of the other cases DeJoy cites involve a plaintiff's supervisor calling the plaintiff the n-word or using other racist language.  *See Phillips*, 854 F.3d at 325 (union representatives using racist language); *Reynolds*, 544 F. App'x at 616 (fellow employee using racist language); *Ladd*, 552 F.3d at 497 (fellow employee using racist language).

DeJoy's argument that the conduct at issue is too isolated to qualify as severe and pervasive also fails.  (D.N. 21, PageID # 71; D.N. 30, PageID # 839)  While "occasional offensive utterances"

are insufficient "to create a hostile work environment," *Williams*, 643 F.3d at 512, "use of the word 'n****r,' even taken in isolation, is not a 'mere offensive utterance.'" *Johnson v. United Parcel Serv., Inc.*, 117 F. App'x 444, 454 (6th Cir. 2004) (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1116 (9th Cir. 2004); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001)). "[T]he word 'n****r' is pure anathema to African-Americans. . . . Perhaps no single act can more quickly create an abusive working environment than the use of an unambiguously racial epithet such as 'n****r.'" *E.E.O.C. v. Ralph Jones Sheet Metal, Inc.*, 777 F. Supp. 2d 1119, 1123–24 (W.D. Tenn. 2011) (denying defendant's motion for summary judgment when plaintiff alleged a foreman used the n-word on "numerous occasions") (quoting *Spriggs*, 242 F.3d at 184) (internal quotation marks omitted). And, use of the n-word is even more "threatening" when used by a supervisor. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 763 (1998) ("[A] supervisor's power and authority invests his or her harassing conduct with a particular threatening character."); *see Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 278 (4th Cir. 2015) (en banc) ("[A] supervisor's use of [a racial epithet] impacts the work environment far more severely than use by co-equals." (quoting *Rodgers v. W.-S. Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993)) (internal quotation marks omitted)); *Johnson*, 117 F. App'x at 454 (noting that "the fact that [a] racial slur was uttered by the division manager . . . would have greatly increased its severity").

The Sixth Circuit has indicated that even a "lone" use of a racial slur by a supervisor can qualify as an "extremely serious" incident sufficient to "create a hostile work environment." *See Ennis v. Tennessee*, 835 F. App'x 811, 820 (6th Cir. 2020) (quoting *Faragher*, 524 U.S. at 788) (citing *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1254 (11th Cir. 2014) (supervisor carving racial slur into a wall at the workplace); *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013) (use of an "offensive racial epithet" by a supervisor while yelling at a subordinate); *Rodgers*,

6

12 F.3d at 675 (use of the n-word by a supervisor in the presence of subordinates))). Other circuit courts have also recognized "the magnitude of the offensiveness of being referred to as . . . 'n****[r]'" in the workplace, noted that "the term 'n****[r]' is '[t]he most noxious racial epithet in the contemporary American lexicon,'" and rejected summary judgment under circumstances similar to those in this case. *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 401 (5th Cir. 2021) (quoting *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 409 (5th Cir. 2015) (use of racial slang by a coworker directed at plaintiff several times and towards others "regularly"); *see also Mack v. Town of Pinetop Lakeside*, 780 F. App'x 448, 451 (9th Cir. 2019) (use of "four racial slurs" by supervisor in plaintiff's presence); *Castleberry v. STI Grp.*, 863 F.3d 259, 262 (3d Cir. 2017) (use of racial slur by supervisor in plaintiff's presence); *Boyer-Liberto*, 786 F.3d at 279–81 (en banc) (use of racial epithets twice by supervisor while yelling at plaintiff).

Viewing the evidence in the light most favorable to Plaintiffs, *Loyd*, 766 F.3d at 588, the Court finds that there is a genuine issue of material fact as to whether King's use of the n-word and Nowland's use of "boys" on separate occasions, and King's use of the n-word on one additional occasion when referring to Mosley, unreasonably interfered with Plaintiffs' work performance. (D.N. 23, PageID # 549, D.N. 31, PageID # 1114) Thus, Plaintiffs have satisfied the unreasonable-interference element of the hostile-work-environment inquiry. *See Scott*, 391 F. App'x at 477–78.

### 2. Employer Liability

To proceed on their hostile-work-environment claim, Brown and Mosley must also show that a genuine issue of material fact exists as to employer liability. *See Scott*, 391 F. App'x at 478 (citing *Clay*, 501 F.3d at 706). "If [a] supervisor's harassment culminates in a tangible employment action, the employer is strictly liable." *Wyatt*, 999 F.3d at 412 (quoting *Vance v. Ball*

7

*State Univ.*, 570 U.S. 421, 424 (2013)). But if there is no tangible employment action, "'the employer may escape liability by establishing' an affirmative defense under the *Faragher-Ellerth* framework." *Id.* (quoting *Vance*, 570 U.S. at 424). The parties agree that supervisors, rather than coworkers, perpetrated the incidents and that Plaintiffs did not suffer a "tangible employment action."[1] (*See* D.N. 21, PageID # 73; D.N. 23, PageID # 549; D.N. 30, PageID # 840–41; D.N. 31, PageID # 1114) However, the parties contest the application of the *Faragher-Ellerth* affirmative defense. (*See* D.N. 21, PageID # 73; D.N. 23, PageID # 549; D.N. 30, PageID # 840–41; D.N. 31, PageID # 1114)

USPS is not liable for a supervisor's harassment if DeJoy can show that USPS qualifies for an affirmative defense under the *Faragher-Ellerth* framework. *See Wyatt*, 999 F.3d at 412 (citing *Vance*, 570 U.S. at 424). DeJoy must show that (1) USPS "exercised reasonable care to prevent and correct and promptly any . . . harassing behavior" and (2) Plaintiffs "unreasonably failed to take advantage of any preventative or corrective opportunities provided by [the employer] or to avoid harm otherwise." *Faragher*, 524 U.S. at 807–08. The burden is on DeJoy to prove that USPS satisfies both prongs of the test. *See Shields v. Fed. Exp. Customer Info. Servs. Inc.*, 499 F. App'x 473, 478 (6th Cir. 2012) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 146, n.7 (2004)).

It is not necessary to determine whether DeJoy satisfies the first prong of the *Faragher-Ellerth* affirmative defense because he cannot satisfy the second prong. *See Faragher*, 524 U.S. at 807–08. "Drawing all reasonable inferences in [Plaintiffs'] favor," *Loyd*, 766 F.3d at

---

[1] Plaintiffs fail to assert that they suffered a "tangible employment action" in their hostile-work-environment claim. (*See* D.N. 1; D.N. 23; D.N. 27; D.N. 31) Thus, Plaintiffs forfeit this argument. *See Briggs v. Univ. of Detroit-Mercy*, 611 F. App'x 865, 870 (6th Cir. 2015) (noting the plaintiff could not "preserve arguments in support" of one claim by "pleading" them in another claim (citing *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 371 (6th Cir. 2013) ("[E]ven if two claims provide the same remedy, a plaintiff asserting both needs to establish the legal elements of each.")).

588, the record shows that Brown and Mosley took "advantage of . . . corrective opportunities provided by" USPS. *Thornton*, 530 F.3d at 456. While DeJoy contends that Plaintiffs "did not report anything to USPS" regarding the incidents with King and Nowland, it is undisputed that Plaintiffs filed EEO complaints in December 2016, alleging, *inter alia*, race discrimination perpetuated by King and Nowland. (D.N. 21, PageID # 74; D.N. 30, PageID # 842; *see* D.N. 21-7, PageID # 659; D.N. 30-6, PageID # 921)

DeJoy does not cite, nor is the Court aware of, any Sixth Circuit cases that hold that a plaintiff who files an EEO complaint instead of complaining directly to a manager or supervisor "unreasonably fail[s] to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Thornton*, 530 F.3d at 456 (citing *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765; *Jackson*, 191 F.3d at 658). In fact, USPS's anti-harassment policy lists the "EEO complaint process" as an avenue for "additional relief" from workplace harassment. (D.N. 30, PageID # 842; D.N. 30-14, PageID # 1041)  The Court cannot find that pursuing an "alternative avenue[]" of relief provided for in USPS's anti-harassment policy is unreasonable. *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 267 (6th Cir. 2009) (stating that it was unreasonable for plaintiff to report harassment to the supervisor who harassed her when the policy provided "alternative avenues" for reporting); *see Coy v. Cty. of Delaware*, 993 F. Supp. 2d 770, 788 (S.D. Ohio 2014) (denying defendant's motion for summary judgment when plaintiff reported harassment to Human Resources instead of supervisors in accordance with the employer's anti-harassment policy). Further, DeJoy concedes that Mosley complained to a supervisor in 2015 that King "was not talking to him professionally" after he called Mosley the n-word. (D.N. 30, PageID # 842)  Thus, DeJoy has failed to show that USPS qualifies for the *Faragher-Ellerth* affirmative defense. *Thornton*, 530 F.3d at 456.

Because a genuine issue of material fact exists as to whether the harassment unreasonably interfered with the Plaintiffs' work performance and whether USPS is liable, the Court must deny DeJoy's motion for summary judgment as to Plaintiffs' hostile-work-environment claim. *See* Fed. R. Civ. P. 56(e).

**B.     Retaliation**

DeJoy also moves for summary judgment on Plaintiffs' retaliation claim. (D.N. 21, PageID # 75; D.N. 30, PageID # 843)  To survive summary judgment on their retaliation claim, Plaintiffs must establish a prima facie case of retaliation by showing that "(1) [they] engaged in a protected activity; (2) [their] 'exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was "materially adverse" to [them]; and (4) a causal connection existed between the protected activity and the materially adverse action.'" *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018) (quoting *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014)).

DeJoy challenges Plaintiffs' proof on the second, third, and fourth elements of the prima facie case.[2]  (D.N. 21, PageID # 76; D.N. 30, PageID # 843–44)  In response, Brown and Mosley point to three actions they argue are materially adverse: (1) Adam Nowland's "use of the word 'boys'" when assigning Plaintiffs "pivot time"; (2) Kevin Scott's "failure to recognize" Plaintiffs as veterans at the annual USPS meeting, although he had recognized Plaintiffs as veterans in years past; and (3) "wrongful assignment of overtime by supervisor Adam Green in December 2016." (D.N. 23, PageID # 551–52; D.N. 31, PageID # 1117)  Plaintiffs argue that these actions were "so

---

[2] Because DeJoy does not dispute that Brown and Mosley engaged in a protected activity under Title VII, the Court will assume that they have produced sufficient evidence to establish this element.  *See Rogers*, 897 F.3d at 775 (holding that an employer "implicitly conceded" two elements by failing to make arguments about either).

10

temporally related" to their first EEO complaint in August 2016 "that a reasonable inference of retaliation can be drawn." (D.N. 23, PageID # 552; D.N. 31, PageID # 1117)

DeJoy characterizes omitting Plaintiffs' names at the annual USPS meeting and requiring Plaintiffs to work overtime three days in a row as "quintessential 'petty slight[s]'" that do not rise to the level of materially adverse actions. (D.N. 21, PageID # 77; D.N. 30, PageID # 846 (quoting *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004))) DeJoy also argues that Plaintiffs originally alleged that Nowland called them "boys" in May 2016, three months before they first complained to the EEO office. (D.N. 24, PageID # 634; D.N. 31, PageID # 1266) He asserts that this "implied amendment to Plaintiff[s'] complaint is improper" and that the Court should consider only the allegations in Plaintiffs' complaint. (D.N. 24, PageID # 634; D.N. 31, PageID # 1266 (citing *Karath v. Bd. of Trs. of Tunxis Cmty. College*, No. 3:07–cv–1073 (WWE), 2009 WL 4879553, at *9 (D. Conn. Dec. 10, 2009)))

A "materially adverse" action under Title VII is an action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Laster*, 746 F.3d at 731 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *see* 42 U.S.C. § 2000e-3(a). When analyzing whether an action is materially adverse, "context matters." *Burlington*, 548 U.S. at 69; *see Laster*, 746 F.3d at 731 ("The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." (quoting *Burlington*, 548 U.S. at 69) (internal quotation marks omitted)). Materially adverse actions are distinct from "those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington*, 548 U.S. at 68. Whether an action is materially adverse is an objective inquiry. *Id.*

11

Even if Scott intentionally failed to recognize Plaintiffs alongside other veterans at the annual USPS meeting, Green intentionally required Plaintiffs to work overtime for three days, and Nowland referred to Plaintiffs as "boys" on a single occasion after they complained to the EEO office, Plaintiffs' retaliation claim fails because these are not materially adverse actions. *See Bronson v. Henry Ford Health Sys.*, No. 15-10111, 2016 WL 4701478, at *4 (E.D. Mich. Sept. 8, 2016) (giving employee extra work assignments to complete during shift was not a materially adverse action); *Scott v. Donahoe*, 913 F. Supp. 2d 355, 367 (W.D. Ky. 2012) (supervisor and coworkers "snubbing" and criticizing plaintiff were not materially adverse actions); *Blackburn v. Shelby Cty.*, 770 F. Supp. 2d 896, 925 (W.D. Tenn. 2011) (coworkers "shunning" plaintiff was not a materially adverse action); *Kavanaugh v. Miami-Dade Cty.*, 775 F. Supp. 2d 1361, 1370 (S.D. Fla. 2011) ("With regard to the name-calling, typically, single or few offensive utterances spoken about employees are not severe or pervasive enough to constitute materially adverse action supporting a claim of retaliatory harassment."); *cf. Laster*, 746 F.3d at 732 (finding summary judgment on retaliation claim improper when "[p]laintiff was denied training opportunities and privileges, singled out for violating at least two department policies that were selectively enforced against him, and disciplined more harshly than his peers for identical violations"). That is, a reasonable employee would not be "dissuaded" from "making or supporting a charge of discrimination" based solely on these three incidents. *Laster*, 746 F.3d at 731 (citing *Burlington*, 548 U.S. at 68). Therefore, summary judgment is appropriate on Plaintiffs' retaliation claim.

## III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Defendant's motion for summary judgment (D.N. 21; D.N. 30) is **GRANTED** as to Plaintiffs' retaliation claim. The motion is **DENIED** as to Plaintiffs' claim of hostile work environment.

Further, the Court requests that within **thirty (30) days of entry** of this Memorandum Opinion & Order Magistrate Judge Colin H. Lindsay (D.N. 10) conduct a status conference with the parties to set a final schedule, to include a trial date and, at his discretion, a settlement conference.

November 24, 2021

David J. Hale, Judge
United States District Court